In the Matter of THOMAS M. FAHEY, Doing Business as CASTLE REST NURSING HOME, Appellant, v DAVID AXELROD, as Commissioner of the New York State Department of Health, Respondent.

Third Department, October 24, 1991

### APPEARANCES OF COUNSEL

*Byrne, Costello & Pickard, P. C. (Matthew V. Byrne III* of counsel), for appellant.

*Robert Abrams, Attorney-General (Cynthia F. Kruesi* and *Nancy A. Spiegel* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

Petitioner is the owner and operator of Castle Rest Nursing Home, a residential health care facility in the City of Syracuse, Onondaga County, and is an authorized Medicaid provider. Petitioner initially acquired his interest in the facility in 1966 as a member of a partnership which purchased the former Syracuse General Hospital for $860,000 and converted it into a nursing home. In 1972, following a dispute between the partners, petitioner purchased the other partners' interests in the facility for $2,263,163.

As the result of a dispute with the State Department of Health (hereinafter DOH) regarding the capital cost element of the facility's Medicaid reimbursement, petitioner commenced an earlier CPLR article 78 proceeding which then came before this court on appeal from an order denying respondent's motion to dismiss the petition *(see, Matter of Fahey v Axelrod,* 152 AD2d 867). In that proceeding it was alleged that, pursuant to Public Health Law § 2808 (2-a) (c) and 10 NYCRR 86-2.21, the facility should have been reimbursed for its capital costs on the basis of petitioner's 1972 acquisition price rather than the partnership's acquisition

costs in 1966. We reversed and dismissed the petition, without reaching the merits, on the ground that petitioner had failed to exhaust his administrative remedies *(see, supra,* at 868-870). Petitioner has since exhausted those remedies, respondent having found no issue of fact warranting a hearing.

In January 1990 petitioner commenced the instant CPLR article 78 proceeding, again seeking, *inter alia,* to annul respondent's determination basing the capital cost component of the facility's 1981 Medicaid reimbursement on the partnership's 1966 purchase price. Supreme Court dismissed the petition and this appeal by petitioner followed.

■ In 1975, as the result of findings that residential health care facilities were frequently transferred or sold to inflate real property costs and, consequently, Medicaid rates, the Legislature amended the Public Health Law to require that respondent promulgate regulations applicable to all residential health care facilities regarding real property costs, which were to be determined on a cost valuation basis rather than upon the actual sale price *(see,* mem of Comm on Rules, Bill Jacket, L 1975, ch 650; *see also,* Public Health Law § 2808 [1] [b]; 10 NYCRR 86-2.21). Subsequently, in 1977 additional legislation, including Public Health Law § 2808 (2) (c) (currently Public Health Law § 2808 [2-a] [c]), was enacted for the stated purpose of providing "guidance on the real property component of reimbursement rates", as well as insuring "that windfall profits [would] not accrue to residential health care facilities franchised under [Public Health Law art 28]" (mem of State Health Planning Commn, Bill Jacket, L 1977, ch 521; *see,* L 1978, ch 483). Public Health Law § 2808 (2-a) (c) provides that "[f]or facilities granted operating certificates prior to March [10, 1975], the real property costs shall be computed upon a cost valuation basis of the facility as determined by [respondent]". Here, the parties do not dispute that both Public Health Law § 2808 (2-a) (c) and the regulations thereunder *(see,* 10 NYCRR 86-2.21) mandate that capital cost reimbursement be made on a cost valuation basis. Petitioner contends, however, that respondent's determination that the applicable cost was that of the partnership's 1966 acquisition was based upon an irrational interpretation of DOH regulations. We disagree.

According to the relevant portion of 10 NYCRR 86-2.21 (a) (6), a facility's initial allowed facility cost means "the costs of the facility as verified by audit" or where, as here, there has been no audit, "costs imputed pursuant to subdivision (g) of

this section, in or prior to the first year of useful facility life attributable to the acquisition of land and the construction, acquisition or renovation of building and nonmovable equipment". Paragraph (1) of 10 NYCRR 86-2.21 (g) provides that respondent "may estimate the original fair and reasonable cost of the facility * * * and impute an initial allowed facility cost to * * * every facility for which records on the historical cost or book value of land, building or nonmovable equipment are not available". In view of the clear legislative intent to prevent residential health care facilities from reaping windfall profits resulting from turnover at inflated purchase prices and the foregoing regulations authorizing respondent, in the absence of data establishing a facility's historical costs, to *estimate* the facility's original reasonable cost, we cannot conclude that respondent's calculation of the initial allowed facility cost as the original $860,000 acquisition price rather than the subsequent 1972 purchase price was either irrational, arbitrary or capricious *(see, Hurlbut v Axelrod,* 101 AD2d 999). Furthermore, petitioner made no showing of severe economic hardship to the facility warranting an exception to application of the regulations *(see,* Public Health Law § 2808 [2-a] [c]; *Pinnacle Nursing Home v Axelrod,* 126 AD2d 940). Accordingly, respondent's determination is entitled to deference by this court *(see, Matter of Cortlandt Nursing Care Center v Whalen,* 46 NY2d 979, 980; *Matter of Silver Lake Nursing Home v Axelrod,* 156 AD2d 789, 790).

■ We are unpersuaded by petitioner's contention that respondent's use of the 1966 acquisition cost as the initial allowed facility cost was irrational because it did not reflect the value of the improvements made to the facility in order to convert it into a nursing home. While the regulations clearly permit respondent to adjust the initial allowed facility cost to reflect the value of capital improvements *(see,* 10 NYCRR 86-2.21 [e] [8]), there is nothing in the record indicating that petitioner submitted any documentation to DOH regarding such improvements *(see,* 10 NYCRR 86-2.21 [a] [9]). We have examined petitioner's remaining arguments and find them to be without merit.

MAHONEY, P. J., WEISS and MERCURE, JJ., concur.

Ordered that the judgment is affirmed, with costs.